PETER F. SAMUEL, BAR NO. 072503
SAMUEL AND SAMUEL
5050 Sunrise Boulevard, Suite C-1
Fair Oaks, CA 95628
(916) 966-4722
(916) 962-2219 Facsimile
pfsamuel@samuellaw.com

Attorneys for Plaintiff,
Gerald Glazer and Julius Cherry

## UNITED STATES DISTRICT COURT FOR

## THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD GLAZER, JULIUS CHERRY, both individually and derivatively on behalf of The Private Residences at Ontario Place Condominium Association,<br><br>Plaintiffs,<br><br>v.<br><br>THE PRIVATE RESIDENCES AT ONTARIO PLACE CONDOMINIUM ASSOCIATION, An Illinois not for profit corporation, and its Board of Managers, ELLEN GUTIONTOV, JASON BISCHOFF, MICHAEL LANE, SAMANTHA LANE, and MALEK ABDULSAMAD, each individually and Collectively, Sudler Property Management, an Illinois corporation,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS,**<br>**BREACH OF FIDUCIARY DUTY, DECLARATORY JUDGMENT INJUNCTIVE RELIEF AND OTHER RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, BREACH OF FIDUCIARY DUTY, DECLARATORY JUDGMENT INJUNCTIVE RELIEF AND OTHER RELIEF

Plaintiffs, Gerald Glazer, Julius Cherry, both individually and on behalf of The Private

Residences at Ontario Place Condominium Association, for their Complaint against the

Defendants, The Private Residences at Ontario Place Condominium Association (the

"Condominium Association"), and Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad, each individually, and collectively as the Condominium Association Board of Managers ("Board of Managers"), Sudler Property Management, An Illinois corporation, state as follows:

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of civil Code Procedure 38(b), Plaintiffs hereby demand a jury trial in the above-entitled action.

## JURISDICTION AND VENUE

1. Plaintiffs bring this civil-rights action under the Fourth and Fourteenth Amendments to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

3. Venue is authorized in this judicial district by 28 U.S.C. § 1391(b)(2).

## NATURE OF THE CASE

4. This is a civil-rights case in which Plaintiffs are seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 and under Illinois Compiled Statutes Chapter 735 at §5/2-701, (hereafter cited as 735 ILCS 5/2-701) that the purported sale of the Condominiums violates the United States Constitution and the Illinois State Constitution, Article 1, Section 2; and to construe and declare the rights and authority of the parties under the Declaration and Bylaws of the Condominium Association and to construe and declare the rights and authority of the parties under certain provisions of the Condominium Property Act,

765 ILCS 605/1 et seq. (the "Condominium Act"). Plaintiffs further seek an injunction preventing the sale of the Condominium project, because of the constitutional violations and because the sale would violate the December 12, 2019, Amendment to Declaration which precludes any sale or transfer which would result in any one person or entity owning more than, five percent (5%) of the total ownership interest in The Private Residences of Ontario Place Condominium Association.

5.       Specifically, Plaintiffs are seeking relief against the Defendants both individually and derivatively on behalf of The Private Residences of Ontario Place, a Condominium Association, for breach of fiduciary duty owed to the members of the Condominium Association, each of whom are unit owners in The Private Residences of Ontario Place, a Condominium (the "Condominium"), by: (i) failing to follow the requirements and procedures mandated by the declaration and bylaws of the Condominium Association and by the Condominium Act, (ii) usurping the authority of the members/unit owners ("Unit Owners") of the Condominium Association, (iii) diverting funds of the Condominium Association for use to carry out an unauthorized scheme and purpose; (iv) directing others to take actions not authorized by the declaration or bylaws of the Condominium Association at the expense and to the detriment of Unit Owners, (v) breaching their duty of loyalty to the Unit Owners by joining in a scheme to facilitate and advance the efforts of a third party with interests adverse to the Unit Owners and to aid the Board's self-interest to acquire and terminate the Condominium; (vi) breaching their duties of loyalty and candor by continuing to pursuing a detrimental course of action which would violate the express Amendment to Declaration and damage all unit owners, with knowledge of the express disagreement of the Unit Owners to pursuing this course of action surreptitiously or otherwise, and (vi) breaching their duties of loyalty and candor by failing to timely disclose to the Unit

Owners crucial information in the possession of the Board of Managers and Sudler Property Management, to enable the Unit Owners to adequately recognize and stop the wrongful actions of the Board of Managers and Sudler Property Management,.

## PARTIES

6.     The Condominium Association is a unit owners association organized as an Illinois not-for-profit corporation to administer the property comprising the residential Condominium

located at 10 E. Ontario Street, Chicago, Illinois known as "The Private Residences at Ontario Place, a Condominium".

7.     The Plaintiffs are each Unit Owners, owning one or more residential condominium units in the Condominium and, as such, are members of the Condominium Association. Plaintiffs are both senior citizens residing in the Eastern District of California, during the time of their injuries and damages. Julius Cherry is the retired fire chief of Sacramento and of minority descent.

8.     Defendant, The Private Residences at Ontario Place Condominium Association is made a nominal defendant as required as result of Plaintiffs' derivative complaint brought on behalf of the Condominium Association, against the individual members of the Board of Directors and, nominally, against the Condominium Association as required by Illinois law.

9.     Defendant Ellen Gutiontov ("Gutiontov") is a Unit Owner and a member of the Board of Managers of the Condominium Association, serving as its President.

10.     Defendant Mark Bischoff ("Bischoff") is a Unit Owner and a member of the Board of Managers of the Condominium Association, serving as its Secretary.

11.     Defendant Michael Lane ("Michael Lane") is a Unit Owner and a member of the Board of Managers of the Condominium Association.

12.     Defendant Samantha Lane ("Samantha Lane") is a Unit Owner and a member of the Board of Managers of the Condominium Association.

13.     Defendant Malek Abdulsamad ("Abdulsamad") is a Unit Owner and a member of the Board of Managers of the Condominium Association.

14.     Defedant Sudler Property Management ("Sudler") is an Illinois Corporation and at all times relevant was the Property Manager for The Private Residences at Ontario Place Condominium Association. As the property manager Sudler owed a duty of good faith & fair dealing as a fiduciary, to each unit owner and to the plaintiffs herein.

## **BACKGROUND**

15.     The matters complained of in this Complaint all relate to acts and omissions of Gutiontov, Bischoff, Michael Lane, Samantha Lane, and Abdulsamad, individually and collectively as members of the Board of Managers and Sudler Property Management, in respect to the conduct of the affairs of the Condominium Association in connection with a proposed sale of land or units comprising the Condominium pursuant to Section 15 of the Condominium Property Act. (765 ILCS 605/15.)

16.     The Condominium Association was created by recording a Declaration of Condominium in the office of the Cook County Recorder of Deeds on October 28, 2005 as document no. 0530118066 (the "Declaration").

17.     The Condominium consists of approximately 467 residential units (including three combined double units), 3 commercial units, and approximately 521 parking units; each

of which constitutes a "Unit" and all of which constitute the "Units"; with all land and areas of the Condominium not located within a Unit constituting the common elements.

18.     Each Unit in the Condominium is assigned through the Declaration an undivided percentage interest of ownership in the common elements.

19.     All of the Units and common elements comprising the Condominium are owned by the Unit Owners, who make up the members of the Condominium Association.

20.     No land, Units or common elements comprising the Condominium are owned by the Condominium Association.

21.     Pursuant to Section 18.3 of the Condominium Act, the Condominium Association is responsible for the overall administration of the property comprising the Condominium through its duly elected board of managers.

22.     As provided in Section 18.3 of the Condominium Act, the Condominium Association has all powers necessary or convenient to effect the purposes for which the Condominium Association was organized and to do every other act not inconsistent with law which may be appropriate to attain the purposes set forth in the Condominium Act or in the condominium instruments. The term "condominium instruments" is a defined term under Section 2(l) of the Condominium Act and means "all documents and authorized amendments thereto recorded pursuant to the [Condominium] Act, including the declaration, bylaws and plat."A complete copy of the condominium instruments, including the Declaration, with the bylaws and plat attached thereto as exhibits, is attached hereto as **Exhibit A.**

23.     As reflected in the condominium instruments and the Rules and Regulations of the Condominium Association adopted pursuant to the condominium instruments, the purpose of the Condominium Association, known as *The Private Residences at Ontario Place, A*

*Condominium*, is to serve as a residential dwelling community for Unit Owners and their families and tenants, with uses ancillary thereto. A copy of the Rules and Regulations of the Condominium Association is attached hereto as **Exhibit B**.

24. The broad powers, duties and authority of the Condominium Association are allocated by the Condominium Act and the Bylaws between (i) the Board of Managers and (ii) the members/Unit Owners, respectively. Although included within the Declaration attached hereto as Exhibit A, for ease of reference a copy of the bylaws ("Bylaws") of the Condominium Association is separately attached hereto as **Exhibit C**.

25. As provided in Section 18.4 of the Condominium Act: "The board of managers shall exercise all powers, duties and authority vested in the association by law or the condominium instruments *except for such powers, duties and authority reserved by law to the members of the association*." 765 ILCS 605/18.4 (emphasis added). At all times alleged in this complaint Sudler Property Management was acting as the agent for the Board of Managers in executing and perpetrating the acts described herein.

26. By affirmative vote of approval by 75.74% of the Unit Owners as of December 10 2019, an Amendment to the Declaration of Condominium for The Private Residences at Ontario Place Condominium ("Amendment to Declaration") was approved and subsequently executed by the Board of Managers on December 12, 2019 and recorded in the office of the Cook County Recorder of Deeds on December 17, 2019 as document no. 1935110052. A copy of the Amendment to Declaration is attached hereto as **Exhibit D**.

27. As provided in the Amendment to Declaration approved by a supermajority of unit owners in December 2019, a "conveyance, sale, gift, devise or transfer shall not be to an individual, entity and/or affiliated entities (including but not limited to, holding company, parent

or subsidiary entity) which, as a result of such conveyance, sale, gift, devise or transfer would own, either individually, collectively or in any aggregate form, interest which exceed five percent (5%) of the total ownership interest in in The Private Residences of Ontario Place Condominium Association." Exhibit D, § 1(a). The defendants have attempted to and violated this Amendment continuously since December 2019.

28.    Sometime prior to March 10, 2020, the Board of Managers received the first Letter of Intent ("1st LOI") issued by Strategic Properties of North America ("SPNA") dated February 26, 2020 "for the purchase of approximately 467 Units along with the common elements of the [Condominium] Association as part of a bulk sale of the [Condominium] Association property pursuant to Section 15 of the Illinois Condominium Act and the Chicago Condominium Ordinance." ( **Attached as Exhibit E**)

29.    The Bylaws and the Condominium Act reserve to the Unit Owners the power  and authority to decide whether to sell land or units on behalf of all Unit Owners.

30.    In August 2020, a formal vote to sell the building for $188M failed. Nevertheless that same night, Ms. Gutiontov signaled to owners the intention of the Board to remain receptive to SPNA, in case they wanted to revise their offer.

31.    On July 29, 2021, the Board again submitted another Letter of Intent( 2nd LOI) to purchase the entire condominium unit by SPNA. This submittal also included a cover letter to the unit owners advising:

> Voting Packages are being distributed starting on July 29 and 30, 2021. The voting period officially commences on August 5, 2021. There will also be a Unit Owner meeting on August 26, 2021 to register the votes. Official meeting notices will be sent separately. An independent auditor will provide an official tabulation

of votes cast through August 26th within a day or two after August 26th meeting,

but an unofficial tabulation of votes is intended to be announced at the end of the

meeting on August 26th. (See **Exhibit F** attached hereto)

32. The vote on the 2nd LOI was completed on August 26, 2021 and the de-conversion vote failed again. Rather than accept the Unit owner decision and reject the offer, the defendant Board Members immediately met privately and secretly to strategize about anyway to change the vote. After returning an hour later, without discussion, they hastily made a motion to continue the vote beyond the predetermined and noticed final day for voting. When queried about this unusual maneuver defendant board members claimed it was a "closed session", even though this was not a Board Managers meeting, but rather a noticed "unit members meeting."

33. On August 31, 2021 the Board of Managers emailed another notice of Unit Owners Meeting on September 10, 2021, for purportedly "(in-person voting and tabulation status). This was a desperate and intentional maneuver to circumvent the will of the Unit Owners for the Managers own self-interest. (See **Exhibit G** attached hereto)

34. With the aid and assistance of Sudler Property Managers, the Board of Managers continued their unauthorized "vote extension" meeting to September 10, 2021. Moving forward with this sham vote, violative of the Associations own by-laws, the Board of Managers and Sudler Property management, railroaded this vote to intentionally push through the sale knowing Plaintiffs would be damaged. All defendants colluded with one another to perpetuate this fraud on the unit owners knowing of the damages to be suffered.

35. As a result of this massive fraud, Plaintiffs have been damaged in the value of their units and have suffered extreme emotional distress. An almost 100 year old resident was

forced to sell his unit to Ellen Gutiontov, the President of the Board. She has refused to disclose how much she stands to profit from this nearly 100 year old resident.

## PROCEDURE MANDATED BY THE BYLAWS TO OBTAIN UNIT OWNER AUTHORIZATION TO PURSUE A SALE OF LAND OR UNITS ON BEHALF OF ALL UNIT OWNERS

36. The procedure to determine initially whether the Unit Owners wish to consider a sale of land or units on behalf of all unit owners is set forth in Article III, Section 7 of the Bylaws, adopted as mandated by Section 18(b)(13) of the Condominium Act. Exhibit C, Art. III § 7.

37. Also incorporated into the Bylaws of the Condominium Association by mandatory inclusion pursuant to Section 18(b)(13) of the Condominium Act is as follows:

"that matters subject to the affirmative vote of not less than 2/3 of the votes of unit owners at a meeting duly called for that purpose, shall include, but not be limited to:

(i) . . . (ii). . .

(iii). . . the purchase or sale of land or of units on behalf of all unit owners."

(765 ILCS 605/18(b)(13))

38. Article III, Section 2 of the Bylaws provides, in pertinent part:

"Special Meeting. Special meetings of the members may be called by the Board, the President, or not less than 20% of the members."

1 (Exhibit C, Art III § 2)

2

3     39. Article III, Section 3 of the Bylaws provides:

4

5     "Place and Time of Meeting. All meetings of the members shall take place at 8:00

6     p.m., in some section of the Property designated by the person or persons calling

7     the meeting, or at such other reasonable place or time designated by the Board or

8     the person or persons calling the meeting."

9

10

11 (Exhibit C, Art III § 3)

12

13     40. Article III, Section 4 of the Bylaws provides, in pertinent part:

14

15     "Notice of Meetings. Written or printed notice stating the purpose, place, day and

16     hour of any meeting of members shall be mailed or delivered to each member

17     entitled to vote at such meeting, not less than ten days nor more than 30 days

18     before the date of such meeting, by or at the direction of the President or

19     Secretary, or the officer or person calling the meeting . . .".

20

21 (Exhibit C, Art III § 4)

22

23     41.     Article III, Section 5 of the Bylaws provides as follows:

24

25     "Quorum. The members present at a meeting in person or by proxy, holding 20%

26     of the votes which may be cast at any meeting, shall constitute a quorum at such

27     meeting. If a quorum is not present at the commencement of any meeting of

28

members, the meeting shall be adjourned and may only be called again in accordance with the provisions of these By-Laws."

(Exhibit C, Art III § 5)

42.   At no time, either before or after receipt of the 1st or the 2nd LOI, was a special meeting of members called to consider a sale of land or of units on behalf of all unit owners, as required by Article III, Section 2 of the Bylaws and Section 18(b)(13) of the Condominium Act. (Exhibit C)

Art III § 2;  765 ILCS 605/18(b)(13).

43.   At no time, either before or after receipt of the 1st or the 2nd LOI, was a special meeting of Unit Owners scheduled at a place and time as required by Article III, Section 3 of the Bylaws and Section 18(b)(13) of the Condominium Act to consider a sale of land or of units on behalf of all Unit Owners. (Exhibit C, Art III § 3;  765 ILCS 605/18(b)(13).)

44.   At no time, either before or after receipt of the 1st & 2nd LOI, was written notice served upon the Unit Owners stating the purpose of a meeting of members was to obtain the authority of the Unit Owners to pursue a sale of the Units and common elements on behalf of all Unit Owners as required by Article III, Section 4 of the Bylaws and Section 18(b)(13) of the Condominium   Act. (Exhibit C, Art III § 4;  765 ILCS 605/18(b)(13).

45.   At no time, either before or after receipt of the 1st and 2nd LOI, was a quorum of Unit Owners present at the commencement of a special meeting to consider whether to

grant Unit Owner authority to pursue a sale of the Units and common elements on behalf of all Unit Owners as required by Article III, Section 5 of the Bylaws. (Exhibit C, Art III § 5; 765 ILCS 605/18(b)(13).) The Board chose to negotiate in complete secrecy with the prospective purchaser. This resulted in unit allocations which greatly favored the prospective purchaser SPNA and the Individual Board members at the expense of Plaintiffs and others.

46.     At no time, either before or after receipt of the LOI, have 2/3rds of the Unit Owners at a special meeting duly called for that purpose affirmatively voted to authorize a sale of land or units on behalf of all Unit Owners as required by Article III, Section 7 of the Bylaws and Section

18(b)(13) of the Condominium Act. Exhibit C, Art III § 7; 765 ILCS 605/18(b)(13).

47.     The Bylaws, at Article III, Section 7, and the Condominium Act, at Section 18(b)(13), and Section 15 of the Condominium Act, specifically reserve to the Unit Owners the power and authority to decide whether to consider and approve a sale of land or of units on behalf of all Unit Owners. Exhibit C, Art III § 7; 765 ILCS 605/18(b)(13); 765 ILCS 605/15.

48.     As a matter reserved to the Unit Owners, the power and authority to decide whether to sell land or units on behalf of all Unit Owners is a matter excluded from the right, power and authority of the Board of Managers as provided in Section 18.4 of the Condominium Act. (765 ILCS 605/18.4.)

49.     On March 10, 2020, the Board of Managers held a meeting (the "March 10, 2020 Meeting"), fictitiously described in the minutes of the meeting as a "Special Unit

Owners' Meeting", relating to the sale of units and common elements on behalf of all Unit Owners as described in the LOI dated February 26, 2020 received from SPNA.

50.      The March 10, 2020 Meeting was not, in fact, a duly called special meeting of Unit Owners as provided by Article III of the Bylaws in that:

   a.      A notice complying with the requirements of Article III, Section 4 of the Bylaws to call a special meeting of Unit Owners was never given.

   b.      The March 10, 2020 Meeting was not held at a place or time as required by Article III, Section 3 of the Bylaws.

   c.      A quorum of Unit Owners consisting of members present at the meeting in person or by proxy, holding 20% of the votes which may be cast at any meeting, as required by Article III, Section 6 of the Bylaws, were not present at the March 10, 2020 Meeting.

   d.      No vote of Unit Owners was taken at the March 10, 2020 Meeting and, accordingly, 66 2/3 of Unit Owners did not affirmatively approve a sale of land or of units on behalf of all Unit Owners as required by Article III, Section 7 of the Bylaws and Section 18(b)(13) of the Condominium Act.

(Exhibit C, Art III §4-7.)

51.      At the March 10, 2020 Meeting, the Board of Managers, without authority received from the Unit Owners, and in usurpation of the power and authority reserved to the Unit Owners by Article III, Section 7 of the Bylaws and by the provisions of Section 18(b)(13) of the Condominium Act, purported to adopt a series of Board of Manager resolutions as follows:

a. "To approve the execution of Letter of Intent issued by Strategic Properties of North America ("SPNA") dated February 26, 2020, subject to attorney clarification and negotiation, for the purchase of approximately 467 units along with the    common elements of the Association as part of the bulk sale of the Association property pursuant to Section 15 of the Illinois Condominium Property Act and the Chicago Condominium Ordinance;"

b. "To authorize Levenfeld Pearlstein, LLC to prepare and negotiate a purchase and sale agreement with SPNA based on the terms and conditions in the Letter of Intent dated February 26, 2020 along with other customary terms and conditions related to a Section 15 of the Illinois Condominium Property Act and the Chicago condominium Ordinance bulk sale of the property";

c. "To distribute to unit owners of the Association a fully negotiated purchase and sale agreement, subject to final review and negotiation by Levenfeld Pearlstein, LLC, along with all materials and notices necessary to initiate the requisite unit owner vote relating to the purchase and sale agreement";

d. "Approve and confirm any and all acts and communications by Board Members relating to or arising from or in connection with the Letter of Intent issued by SPNA and preparation and negotiation of the purchase and sale agreement".

(See Minutes of March 10, 2020 Meeting, a copy of which is attached hereto as **Exhibit H**.)

52.     Up until the filing of this complaint and continuing, Members of the Board of Managers and Sudler Property Management directly or through intermediaries or agents, engaged in secret discussions with SPNA, undisclosed to the Unit Owners, even prior to receipt of the 1st LOI dated February 26, 2020 and have actively and covertly colluded with SPNA in furtherance of a scheme to solicit and facilitate a prospective sale of land or

units on behalf of all Unit Owners to SPNA pursuant to Section 15 of the Condominium Act, as evidenced by the following:

    a.    In mid-2019 the Condominium Association incurred approximately $2,000 in legal fees to Levenfeld Pearlstein, LLC reportedly in connection with SPNA's interest in acquiring the land and units comprising the Condominium pursuant to Section 15 of the Condominium Act;

    b.    From September 2019 through March 31, 2020 the Condominium Association incurred an additional $14,950 in attorneys' fees to Levenfeld Pearlstein LLC related to "Deconversion – Issues and Guidance". Those unauthorized fees have continued to the present day.

    c.    On September 18, 2019 Gutiontov, in her capacity as President of the Condominium Association, appeared before the Chicago City Council as it considered passage of Section 13-72-85 of the Chicago Municipal Code arguing against the City of Chicago's proposed (and since adopted) increase in the percentage vote necessary to approve a bulk sale of units from 75% to 85%.

    d.    In the Fall of 2019 the Board of Managers on behalf of the Condominium Association obtained an appraisal (the "Section 15 Appraisal") of the land and units owned by the Unit Owners and comprising the Condominium for use in connection with a proposed bulk sale pursuant to Section 15 of the Condominium Act (a "Section 15 Sale"), at a cost to the Unit Owners of approximately $4,000

53.    During March 2020, without receiving authorization from the Unit Owners to pursue a sale of land or units on behalf of all Unit Owners, the Condominium Association incurred additional legal fees in the amount of $4,625.00 in relation to the proposed

1

Section 15 Sale to SPNA.

2

54.        The Condominium Association has continued to incur hundreds of thousands of

3

dollars of attorneys' fees after March 2020 in connection with the proposed bulk sale of

4

land or units on behalf of all Unit Owners without receiving authorization from the Unit

5

6

Owners to pursue such a sale.

7

55.        Since learning of the proposed bulk sale of Units to SPNA pursuant to the 1st

8

LOI dated February 26, 2020, the Plaintiffs have made repeated requests to the Board of

9

Managers and Sudler Property Management pursuant to Section 19 of the Condominium

10

Act and otherwise requesting detailed information concerning the proposed transaction,

11

12

and specifically requested a copy of the Letter of Intent dated February 26, 2020, a copy of

13

any appraisal of the Condominium property, and other pertinent information.

14

56.        Instead of disclosing to Plaintiffs and other Unit Owners all pertinent

15

information falling squarely within the scope of the proposed bulk sale of units to SPNA

16

17

pursuant to Section 15 of the Condominium Act, the Board of Managers and Sudler as its

18

alter ego withheld and concealed such information, claiming that the scope of required

19

disclosure is limited by the categories of information expressly required under Section 19

20

of the Condominium Act.

21

22

57.        Without limitation, the Board of Managers, individually and collectively, in

23

concert with Sudler Property Management, have failed and refused to provide to Plaintiffs

24

a copy of the SPNA LOI dated February 26, 2020 notwithstanding the Board of

25

Manager's fiduciary duty to Plaintiffs to exercise utmost candor, rectitude, care, loyalty

26

27

and good faith toward the Plaintiffs. *See* 765 ILCS 605/18.4 (requiring board members to

28

"exercise the care required of a fiduciary" with respect to condominium unit owners).

58.     By letter dated April 8, 2020 (the "Cease and Desist Letter"), the Board of Managers, individually and collectively, were specifically placed on notice that they should cease and desist actions in breach of their respective fiduciary duties, and cease and desist usurpation of Unit Owner rights and authority in relation to the subject Section 15 Sale with SPNA. A copy of the Cease and Desist Letter is attached hereto as **Exhibit I.**

59.     Instead of taking seriously the objections of Unit Owners raised in the Cease and Desist Letter and conforming their actions as fiduciaries of the Unit Owners to comply with their duty of utmost candor, rectitude, care, loyalty, and good faith, the Board of Managers chose to continue their breach of fiduciary duty by sending out an undated and misleading letter to Unit Owners re "De-conversion Update" (the "Board's Continuing Breach Letter") dismissing the concerns raised by the Unit Owners and characterizing the objecting members/Unit Owners as "a handful of disgruntled Unit Owners". See copy of the Board's Continuing Breach Letter attached hereto as **Exhibit J.**

60.     After sending out the aforementioned "De-conversion Update," the Board proceeded to hold the vote of the Unit Owners on the proposed bulk sale of Units pursuant to Section 15 of the Illinois Condominium Property Act. The proposed bulk sale was defeated by vote of the Unit Owners. See copy of Picker & Associates LLC's summary of the results of the de-conversion vote attached hereto as **Exhibit K.**

61.     Not willing to accept this resounding defeat by the Unit owners, the defendants individually and as the Board of Managers and Sudler, continued to negotiate with SPNA for another letter of intent, despite the express defeat of the first offer to purchase; as previously detailed herein.

62.     The 2nd LOI was resoundly defeated on August 26, 2021. Not willing to accept

this second defeat, the Board and Sudler illegally continued the vote as a result of secret meetings and railroaded the sale so individual Board members and SPNA could profit at the expense of Plaintiffs.

## COUNT I

### (Declaratory Judgment-Individually)

63.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 62, as Paragraph 63 of this Count I as if fully set forth herein.

64.     Defendants assert that the actions of the Board of Managers and Sudler Property Management with respect to the 1st & 2nd LOI's, as described above, were appropriate and correct, and within the power of the Board of Managers pursuant to the condominium instruments and the Condominium Act.

65.     Accordingly, disputes have arisen between the parties concerning:

a.     the construction of the Condominium Act and the scope of authority of the Board of Managers to pursue a Section 15 sale without first obtaining authority from the members/Unit Owners at a special meeting duly called pursuant to Article III, Section 7 of the Bylaws, and Section 18(b)(13) of the Condominium Act;

b.     the obligation of the Board of Managers and Sudler Property Management to be fully transparent as to all matters affecting the members/Unit Owners as relate to the pending bulk sale of land or Units to SPNA pursuant to Section 15 of the Condominium Act;

c.     the purpose of the Condominium Association within the meaning of Section 18.3 of the Condominium Act, and whether pursuing a Section

15 Sale with the intent to terminate the existence of the Condominium Association falls within the authorized purpose of the Condominium Association without first obtaining the authority of the Unit Owners;

d.  the authority of the Board of Managers to expend funds in furtherance of dismantling the Condominium Association through a bulk sale of land or units without having first obtained authority from the members/Unit Owners to do so.

e.  Whether the Amendment to Declaration duly executed and recorded, will void any purported sale transferring more than 5% interest.

f.  The defendants actions wrongfully violated Plaintiffs' civil rights under the United States and Illinois Constitution, in an attempt to take their personal property within their individual units.

g.  Whether Defendants actions violated the U.S. and Illinois constitution by acting as a form of illegal eminent domain not for public good or purpose but to profit large corporations and individuals/Board members.

h.  Whether the Defendants purported contract for the sale of the condominium property violated the Illinois Condominium Property Act and provisions of the Chicago city code regarding condominiums. Specifically the purported contract attempts to sell Plaintiffs' personal property. It attempts to give monetary rights to yes voters of the purported contract even though this is specifically prohibited under the Illinois Condominium Act. It also violates the rights of determining the value of no voters by setting clearly unconscionable valuation standards.

66.  An actual controversy exists between the Plaintiffs and the Defendants with

respect to those disputes specifically referenced in paragraph 62 above, and generally with respect to the rights and duties of the parties.

**WHEREFORE,** Plaintiffs, Gerald Glazer and Julius Cherry, pray   that this Honorable Court enter declaratory judgment in their favor on Count I of this Complaint and against the defendants, The Private Residences at Ontario Place Condominium Association, and its Board of Managers, Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad, individually and collectively, and Sudler Property Management declaring as follows:

a.   That the power and authority to pursue a sale of land or of units on behalf of all unit owners is among the powers and authority reserved to the Unit Owners as referred to in Section 18.4 of the Condominium Property Act 765 ILCS 605/18.4.

b.   That the purpose of The Private Residences at Ontario Place Condominium Association is to be responsible for the overall administration of the Condominium property for the use and benefit of the Unit Owners and their families and tenants, not to facilitate a bulk sale of units pursuant to Section 15 of the Condominium Property Act absent an express directive from the unit owners to do so in compliance with Article III, Section 7 of the Bylaws, and in compliance with Section 18(b)(13) of the Condominium Property Act, 765 ILCS 605/18(b)(13).

c.   That the Condominium Association and its Board of Managers and Sudler Property Management do not have authority to pursue a sale of the land or units on behalf of all unit owners absent the affirmative vote of not less than 66 2/3% of the Unit Owners at a special meeting duly called for that purpose pursuant to Article III, Section 7 of the Bylaws, and pursuant to Section 18(b)(13) of the Condominium Property Act, 765 ILCS 605/18(b)(13);

1

2      d.      That the requirement of Unit Owner approval pursuant to Article III,

3              Section 7 of the Bylaws, and pursuant to Section 18(b)(13) of the

4              Condominium Property Act, 765 ILCS 605/18(b Sudler Property

5              Management)(13) to authorize the Condominium Association and Board

6              of Managers and to pursue a sale of land or of units on behalf of all Unit

7              Owners is preliminary to and in addition to the requirement for final Unit

8              Owner approval of the terms of sale pursuant to Section 15 of the

9              Condominium Property Act 765 ILCS 605/15 and Section 13-72-85 of

10             the Chicago Municipal Code.

11

12     e.      That the fiduciary obligation of full disclosure, candor and loyalty owed

13             by the Board of Managers and Sudler Property Management to the Unit

14             Owners in connection with a bulk sale of Units pursuant to Section 15 of

15             the Condominium Property Act is not limited to merely the sharing of

16             information required by Section 19 of the Condominium Property Act,

17             765 ILCS 605/19, but extends to all information in the possession or

18             control of the Board of Managers and/or Sudler Property Management

19             which a Unit Owner may reasonably find useful to provide guidance or

20             insight in considering a prospective bulk sale of units.

21     f.      That Board of Managers actions, aided and abetted by Sudler Property

22             Management, to promote a bulk sale of land or of units on behalf of all

23             Unit Owners absent express authority received from the Unit Owners,

24             constitutes surreptitious and collusive acts, designed to injure plaintiffs

25             and the expenditure of funds of the Condominium Association to

26             pursue self-serving acts is an unlawful diversion and waste of

27             Condominium Association assets.

28     g.      Any sale to SPNA pursuant to either the 1st IOL and/or 2nd IOL will be

null and void/voidable because it transfers more than 5% interest in violation of the Amendment to Declaration.

h.      The purported sale of the condominium building is illegal under the U.S. and Illinois Constitution.

i.      Defendants purported contract for the sale of condominium property violated key provisions of the Illinois Condominium Act and Provisions of the Chicago city code regarding condominiums and is void on its face.

## COUNT II

### (Breach of Fiduciary Duty - Individually)

67.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 66 as Paragraph 67 of this Count II as if fully set forth herein.

68.     Section 18.4 of the Condominium Act provides: "In the performance of their duties, the officers and members of the board, whether appointed by the developer or elected by the unit owners, shall exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4.

69.     As a fiduciary of the unit owners, the members of the Board of Managers, both collectively and individually, and Sudler Property Management, are bound by a strict duty to treat the Unit Owners with the utmost candor, rectitude, care, loyalty and good faith.

70.     Included within the scope of the fiduciary duty owed by the members of the Board of Managers and Sudler Property Management, to the Unit Owners is a strict obligation to abide by the applicable provisions of the Condominium Act and the terms, requirements and procedures specified in the Declaration and Bylaws of the Condominium Association.

71.      Instead of fulfilling their duties as fiduciaries to Plaintiffs to act with loyalty, full disclosure, and candor to all Unit Owners, the Board of Managers, individually and collectively, and Sudler Property Management, have concealed information and secretly colluded with SPNA, and have secretly acted in the interests of SPNA or themselves, and not in a manner consistent with their duty as fiduciaries to the Unit Owners.

72.      In breach of their duty of loyalty to the members/Unit Owners, the Board of Managers, individually and collectively, and Sudler Property Management, have acted on their own to usurp the authority of the   members/Unit Owners to decide whether a sale of the Units comprising the Condominium is desirable.

73.      In breach of their fiduciary duty of loyalty to the Unit Owners, Sudler Property Management, and the Board of Managers, individually and collectively, have directly or through their attorneys or agents, worked actively and secretly with SPNA and its attorneys to facilitate a Section 15 Sale of all property comprising the Condominium without authorization from the Unit Owners continuing to this day.

74.      Sudler Property Management and each member of the Board of Managers is a sophisticated party with a professional understanding of the scope and requirements undertaken by them as fiduciaries.

75.      Each member of the Board of Managers, because of his/her education, licensure, and professional experience, is a sophisticated party who knows and understands, or should know and understand, the meaning and scope of his or her respective fiduciary duty owed to the Unit Owners.

76.      Accordingly, the actions of Sudler Property Management, and the Board of

Managers, individually and collectively, are in breach of their fiduciary duty owed to the Unit Owners as complained of in paragraphs 19 through 72 hereof are intentional, willful, wanton, knowing, oppressive, constitute a gross overreach of authority, and are in bad faith.

77.     As a result of the breaches of fiduciary duty committed by Sudler Property Management, and the Board of Managers, individually and collectively, Plaintiffs have been damaged by the loss and/or diminution of rights they hold as Unit Owners pursuant to the condominium instruments and the Condominium Act. Plaintiffs have been damaged in the value of their units and have suffered extreme emotional distress.

78.     Plaintiffs will continue to suffer the loss and/or diminution of their rights as Unit Owners unless and until Sudler Property Management, and the Board of Managers, collectively and individually, are enjoined from pursuing a sale of land or units, to SPNA or any other potential buyer, on behalf of all Unit Owners without complying with the requirements of Article III, Section 7 of the Bylaws and Section 18(b)(13) of the Condominium Act.

79.     As a result of the breaches of fiduciary duty committed by Sudler Property Management and the Board of Managers, individually and collectively, Plaintiffs have also sustained monetary damages in the form of attorneys' fees and other costs wrongfully incurred by the Board of Managers in furtherance of the unauthorized transaction with SPNA.

WHEREFORE, Plaintiffs, Gerald Glazer, Julius Cherry, pray that this Honorable Court find that Sudler Property Management, and the Board of Managers, individually and collectively on behalf of The Private Residences at Ontario Place Condominium Association,

have breached their fiduciary duty owed to Plaintiffs, as Unit Owners, and enter judgment in favor of the Plaintiffs on Count II of this Complaint and against the defendants, Sudler Property Management, and The Private Residences at Ontario Place Condominium Association, and its Board of Managers, Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad, individually and collectively, as follows:

    a.    Restraining and enjoining the defendants from pursuing a sale of land or of units on behalf of all Unit Owners without complying with the requirements of Article III, Section 7 of the Bylaws and Section 18(b)(13) of the Condominium Property Act 765 ILCS 605/18(b)(13);

    b.    Permanently restraining and enjoining the defendants from pursuing a bulk sale of land or units to Strategic Properties of North America (SPNA) or any affiliate of SPNA;

    c.    Enter judgment against defendants Sudler Property Management, and the Board of Managers, Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad, individually and collectively, in an amount to be determined at trial but not less than $75,000.00, for all fees and costs paid with Condominium Association funds in pursuit of the unauthorized transaction with SPNA, and such further sums as have been wrongfully expended or incurred by the Condominium Association, and order that such amount be reimbursed by Defendants to The Private Residences at Ontario Place Condominium Association;

    d.    Remove defendants Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad from the Board of Managers by reason of their breach of fiduciary duty to the Unit Owners, and bar them from ever again serving as a member of the Board of Managers at The Private Residences at

Ontario Place Condominium Association.

e.      Remove defendant Sudler Property Management as the Property manager by reason of their breach of fiduciary duty to the Unit Owners, and bar them from ever again serving as Property Managers at The Private Residences at Ontario Place Condominium Association.

f.      Enter judgment for punitive damages in favor of the Plaintiffs, Gerald Glazer and Julius Cherry, and against the defendants Sudler Property Management, and the Board of Managers, Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad, individually, and collectively in  their capacity as the Board of Managers of The Private Residences at Ontario Place, and jointly and severally, for an amount not less than $75,000, the reasonable attorneys' fees and expenses incurred by Plaintiffs in bringing this action and for such greater sum as the Court may determine appropriate to serve as a deterrence to Illinois condominium board members and property managers generally from similarly breaching their fiduciary duties owed to unit owners.

g.      For the loss in diminution of Plaintiffs' units and for their emotional distress.

h.      For such other and further relief as the Court may determine just and equitable.

## COUNT III

**(Breach of Fiduciary Duty, derivatively on behalf of the Condominium Association)**

80.      Plaintiffs reallege and incorporate by reference Paragraphs 1 through 79 above as if fully set forth herein.

81.      Plaintiffs bring this action derivatively on behalf of the Condominium Association.

1    82.     The Condominium Association has declined and/or refused to initiate a lawsuit

2    against the Board of Managers.

3    83.     By letter dated April 8, 2020 (the "Cease and Desist Letter"), the Board of

4    Managers, individually and collectively, were specifically placed on notice that they

5    should cease and desist actions in breach of their respective fiduciary duties, and cease and

6    desist usurpation of Unit Owner rights and authority in relation to the subject Section 15

7    Sale with SPNA. A copy of the Cease and Desist Letter is attached hereto as **Exhibit I.**

8

9    84.     Following receipt of the Cease and Desist Letter, the Board of Managers chose

10   to continue their breach of fiduciary duty by sending out an undated and misleading letter

11   to Unit Owners re "De-conversion Update" (the "Board's Continuing Breach Letter")

12   dismissing the concerns raised by the Unit Owners and characterizing the objecting

13   members/Unit Owners as "a handful of disgruntled Unit Owners". See copy of the

14   Board's Continuing Breach Letter attached hereto as **Exhibit J.**

15

16   85.     Thereafter, the Board of Managers and Sudler Property Management continued

17   in their efforts to effectuate the sale of the Condominium in violation of their fiduciary

18   duty. This included the secret meetings and Board members buying units for their

19   personal gain including one from an almost 100 year old man.

20

21   86.     Accordingly, the actions of Sudler Property Management and the Board of

22   Managers, individually and collectively, are in breach of their fiduciary duty owed to the

23   Unit Owners as complained of in paragraphs 1 through 85 hereof are intentional, willful,

24   wanton, knowing, oppressive, constitute a gross overreach of authority, and are in bad

25   faith.

26

27   87.     As a result of the breaches of fiduciary duty committed by Sudler Property

28

Management and the Board of Managers, individually and collectively, the Unit Owners have been damaged by the loss and/or diminution of rights they hold as Unit Owners pursuant to the condominium instruments and the Condominium Act. The Plaintiffs have also suffered from emotional distress.

88.     The Unit Owners will continue to suffer the loss and/or diminution of their rights as Unit Owners unless and until Sudler Property Management and the Board of Managers, collectively and individually, are enjoined from pursuing a sale of land or units, to SPNA or any other potential buyer, on behalf of all Unit Owners without complying with the requirements of Article III, Section 7 of the Bylaws and Section 18(b)(13) of the Condominium Act.

89.     As a result of the breaches of fiduciary duty committed by Sudler Property Management, and the Board of Managers, individually and collectively, the Unit Owners have also sustained monetary damages in the form of attorneys' fees and other costs wrongfully incurred by the Board of Managers and paid from the resources of the Condominium Association in furtherance of the unauthorized transaction with SPNA.

Wherefore, Plaintiffs not individually, but derivatively on behalf of the Condominium Association hereby respectively request that this Court enter Judgment against the individual Defendants and in favor of the of The Private Residences at Ontario Place Condominium Association as follows:

    a.     Restraining and enjoining the defendants from pursuing a sale of land or of units on behalf of all Unit Owners without complying with the requirements of Article III, Section 7 of the Bylaws and Section 18(b)(13) of the Condominium Property Act 765 ILCS 605/18(b)(13);

b.    Permanently restraining and enjoining the defendants from pursuant a bulk sale of land or units to Strategic Properties of North America (SPNA) or any affiliate of SPNA;

c.    Enter judgment against defendants Sudler Property Management, and the Board of Managers, Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad, individually and collectively, in an amount to be determined at trial but not less than $75000.00, for all fees and costs paid with Condominium Association funds in pursuit of the unauthorized transaction with SPNA, and such further sums as have been wrongfully expended or incurred by the Condominium Association, and order that such amount be reimbursed by Defendants to The Private Residences at Ontario Place Condominium Association;

d.    Remove defendants Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad from the Board of Managers by reason of their breach of fiduciary duty to the Unit Owners, and bar them from ever again serving as a member of the Board of Managers at The Private Residences at Ontario Place Condominium Association.

e.    Remove defendant Sudler Property Management as the Property manager by reason of their breach of fiduciary duty to the Unit Owners, and bar them from ever again serving as Property Managers at The Private Residences at Ontario Place Condominium Association.

f.    Enter judgment for punitive damages in favor of the all Unit Owners of the Private Residents of Ontario Place, and against the defendants Sudler Property Management, and the Board of Managers, Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad, individually, and collectively in their capacity as the Board of Managers

of The Private Residences at Ontario Place, and jointly and severally, for an amount not less than the reasonable attorneys' fees and expenses incurred by Plaintiffs in bringing this action and for such greater sum as the Court may determine appropriate to serve as a deterrence to condominium board members and property managers generally from similarly breaching their fiduciary duties owed to unit owners.

g.     For the loss in diminution in value of individual units and for individual units emotional distress.

h.     For such other and further relief as the Court may determine just and equitable.

## COUNT IV

### (Civil rights violations- Fourth and Fourteenth Amendments to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983 )

90.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 89 as Paragraph 90 of this Count IV as if fully set forth herein.

91.     The United States Constitution, and the Illinois Constitution and the Civil Rights Act of 1871 protects all citizens from States depriving any person of life liberty, or property, without due process of law. The Fourteenth Amendment provides and clarifies no State shall make or enforce any law which deprives....

92.     The defendants in this case, while expressly utilizing the Illinois Condominium Property Act are attempting a sale of both Plaintiffs' real and personal property, which would be in violation of the United States constitution and Illinois Constitution as an unlawful taking of property. This amounts to a government sanctioned form of eminent

domain between private parties. These defendants committed acts as outlined above with the intention of depriving Plaintiffs of real and personal property in violation of the United States and Illinois constitutions.

93.     The defendants in this case colluded so that the "yes" votes for the de-conversion could on August 26, 2021 and September 10, 2021 get extra money for their votes after the fact. This is in direct contravention and expressly prohibited by the Condominium Act.

94.     The defendants in this case secretly colluded to obtain possession of Plaintiffs' personal property even though this is expressly prohibited by the applicable laws and Illinois and U.S. constitution.

95.     The defendants in this case secretly colluded to unfairly value units of Board members and their associates despite repeated requests the valuation methodology was kept secret. The Board president laughed when questioned about why Plaintiffs' property was unfairly valued in their secret meetings.

96.     The defendants in this case in their purported contract included unit valuation methodology made illegal by the Illinois Condominium Act and the U.S. and Illinois Constitution.

97.     Plaintiffs have been damaged by a diminution in the value of their property and emotional distress over the sale of their personal and real property against their wishes.

Wherefore, Plaintiffs individually and derivatively on behalf of the Condominium Association hereby respectively request that this Court enter Judgment against the all defendants collectively and  individually, and in favor of the of The Private Residences at Ontario Place Condominium Association as follows:

i.      Restraining and enjoining the defendants from pursuing a sale of land or

of units on behalf of all Unit Owners without complying with the requirements of Article III, Section 7 of the Bylaws and Section 18(b)(13) of the Condominium Property Act 765 ILCS 605/18(b)(13);

j.   Permanently restraining and enjoining the defendants from pursuing a bulk sale of land or units to Strategic Properties of North America (SPNA) or any affiliate of SPNA;

k.   Enter judgment against defendants Sudler Property Management, and the Board of Managers, Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad, individually and collectively, in an amount to be determined at trial but not less than $75000.00, for all fees and costs paid with Condominium Association funds in pursuit of the unauthorized transaction with SPNA, and such further sums as have been wrongfully expended or incurred by the Condominium Association, and order that such amount be reimbursed by Defendants to The Private Residences at Ontario Place Condominium Association;

l.   Remove defendants Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad from the Board of Managers by reason of their breach of fiduciary duty to the Unit Owners, and bar them from ever again serving as a member of the Board of Managers at The Private Residences at Ontario Place Condominium Association.

m.   Remove defendant Sudler Property Management as the property manager by reason of their breach of fiduciary duty to the Unit Owners, and bar them from ever again serving as Property Managers at The Private Residences at Ontario Place Condominium Association.

n.   Enter judgment for punitive damages in favor of the all Unit Owners of

1

2

3

4

5

6

7

8

9

the Private Residents of Ontario Place, and against the defendants Sudler Property Management, and the Board of Managers, Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad, individually, and collectively in their capacity as the Board of Managers of The Private Residences at Ontario Place, and jointly and severally, for an amount not less than the reasonable attorneys' fees and expenses incurred by Plaintiffs in bringing this action and for such greater sum as the Court may determine appropriate to serve as a deterrence to condominium board members and property managers generally from similarly breaching their fiduciary duties owed to unit owners;

10

11

12

o.    For the loss in diminution of individual units and for emotional distress damages to plaintiffs and others; AND

13

14

For such other and further relief as the Court may determine just and equitable.

15

Date: September 28, 2021

16

17

18

19

20

21

22

23

24

25

26

SAMUEL AND SAMUEL

By: _____

PETER F. SAMUEL

Attorney for Plaintiffs,

GERALD GLAZER &

JULIUS CHERRY,
Individually and
derivatively on
behalf of the Private
Residences at
Ontario Place
Condominium
Association

27

28