UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD GLAZER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE PRIVATE RESIDENCES AT ONTARIO PLACE CONDOMINIUM ASSOCIATION, et al.,<br><br>Defendants. | No. 2:21-cv-01770-DAD-DB<br><br>ORDER GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 15) |

This matter is before the court on a defendants' motion to dismiss plaintiffs' complaint pursuant to Federal Civil Procedure Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). (Doc. No. 15.) On January 31, 2022, defendants' motion was taken under submission on the papers.[1] (Doc.

---

[1] The undersigned apologizes for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. While that situation was partially addressed by the U.S. Senate's confirmation of district judges for two of this court's vacancies on December 17, 2021 and June 21, 2022, another vacancy on this court with only six authorized district judge positions was created on April 17, 2022 and still remains unfilled. It has now been over 37 months since this court had its full complement of authorized district judges. For over twenty-two of those months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants. That situation resulted in the court not being able to issue orders in submitted civil matters within an acceptable period of time and continues even now as the undersigned works through the predictable backlog. This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

1

No. 21.)  For the reasons set forth below, the court will grant defendants' motion to dismiss (Doc. No. 15), in part.

## BACKGROUND

On September 28, 2021, plaintiffs Gerald Glazer and Julius Cherry (collectively, "plaintiffs") filed this action against The Private Residences at Ontario Place Condominium Association (the "Condominium Association"), Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, Malek Abdulsamad, and Sudler Property Management (collectively, "defendants").[2]  (Doc. No. 1.)  In their complaint, plaintiffs allege as follows.

Plaintiffs are owners of units in a residential condominium located at 10 E. Ontario Street in Chicago, Illinois (the "subject condominium").  (Doc. No. 1 at ¶¶ 6–7.)  Defendant Condominium Association is a "unit owners association organized as an Illinois not-for-profit corporation to administer the property" at the subject condominium.  (*Id.* at ¶ 6.)  Defendant Sudler Property Management ("Sudler") is an Illinois corporation that served as the property manager of the subject condominium during the time period relevant to this action.  (*Id.* at ¶ 14.)  Defendants Ellen Gutiontov, Jason Bischoff, Michael Lane, Samantha Lane, and Malek Abdulsamad (the "individual defendants") own units at the subject condominium and are members of the Board of Managers ("BOM") of the Condominium Association.  (*Id.* at ¶¶ 9–13.)

On February 26, 2020, an organization called Strategic Properties of North America ("SPONA") sent the BOM a letter of intent to purchase the subject condominium and the Condominium Association.  (*Id.* at ¶ 28.)  In August 2020, the proposed sale failed to pass a vote by the unit owners of the subject condominium.  (*Id.* at ¶ 30.)  Subsequently, SPONA sent the BOM another letter of intent to purchase the subject condominium and Condominium Association, which was put to another vote before the subject condominium's unit owners—and again failed to pass—on August 26, 2021.  (*Id.* at ¶¶ 31–32.)

/////

---

[2]  The docket also lists "Ellen Bischoff" as a defendant in this action.  However, Ellen Bischoff is not named in plaintiffs' complaint, and the inclusion of this individual on the docket appears to be due to a clerical error.  Accordingly, the court will direct the Clerk of the Court to terminate Ellen Bischoff as a defendant in this action.

2

Despite the two failed attempts to pass the proposed sale of the subject condominium, the individual defendants "immediately met privately and secretly to strategize about anyway [sic] to change the vote." (*Id.* at ¶ 32.) The individual defendants then, with the aid of defendant Sudler, informed unit owners that there would be a "vote extension" through September 10, 2021. (*Id.* at ¶¶ 32–34.) Defendant Sudler and the individual defendants "railroaded this [extended] vote" and thus were able to "intentionally push through the sale." (*Id.* at ¶ 34.) As a result of this sale, unit owners were forced to sell their units, and plaintiffs "have been damaged in the value of their units and have suffered extreme emotional distress."[3] (*See id.* at ¶¶ 35, 77.)

Based on the foregoing allegations, plaintiffs assert the following claims: (1) breach of fiduciary duty in violation of the Illinois Condominium Property Act, 765 ILCS 605/18.4, brought against the individual defendants and defendant Sudler; (2) breach of fiduciary duty in violation of the Illinois Condominium Property Act, 765 ILCS 605/18.4, brought "derivatively on behalf of the Condominium Association" against the individual defendants and defendant Sudler; and (3) Fourth and Fourteenth Amendment due process violations, brought under 42 U.SC. § 1983 against all defendants. (*Id.* at ¶¶ 67–97.) Plaintiffs seek damages, an order enjoining defendants from continuing with the sale to SPONA, an order removing the individual defendants from the BOM, and a declaration that, *inter alia*, defendants did not have authority to pursue the sale of the subject condominiums and that the purported sale of the subject condominiums violated the Illinois Condominium Act, unnamed provisions of the Chicago city code, the Illinois Constitution, and the United States Constitution. (*Id.* at ¶¶ 67, 79.)

Plaintiffs filed their complaint in this court on September 28, 2021. (Doc. No. 1.) On December 16, 2021, defendants filed the pending motion to dismiss plaintiffs' complaint. On February 24, 2022, plaintiffs filed their opposition to the pending motion. (Doc. No. 32.) Defendants filed their reply thereto on March 3, 2022. (Doc. No. 33.)

---

[3] Notably, despite plaintiffs' allegation that "[a]n almost 100 year old resident was forced to sell his unit to [defendant] Gutiontov, the President of the [BOM]," plaintiffs also appear to assert that the sale of the subject condominium to SPONA had not taken place as of the time of filing the complaint. (*See, e.g.*, Doc. No. 1 at ¶¶ 35, 78) (requesting that this court enjoin defendants from pursuing a sale of the subject condominium to SPONA).

3

**LEGAL STANDARD**

**A.     Motion to Dismiss Pursuant to Rule 12(b)(1)**

"Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions." *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021). Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Subject matter jurisdiction is required; it cannot be forfeited or waived. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156. Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Here, because defendants argue that the allegations in plaintiffs' complaint are insufficient for the invocation of federal diversity jurisdiction, defendants mount a facial attack under Rule 12(b)(1).

A party making a facial attack does not submit supporting evidence with the motion because jurisdiction is challenged based solely on the pleadings. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*,

749 F.3d 1117, 1121 (9th Cir. 2014). The court need not assume the truth of legal conclusions cast in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

**B.    Motion to Dismiss Pursuant to Rule 12(b)(2)**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for lack of personal jurisdiction. In opposing such a motion, the plaintiff bears the burden of proof to show that jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). When a defendant's motion to dismiss is based on written materials rather than an evidentiary hearing and is to be decided on the pleadings, affidavits, and discovery materials, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists in order for the action to proceed. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *Picot*, 870 F.3d at 1211.

In determining whether a plaintiff has established personal jurisdiction, the court accepts the plaintiff's allegations as true and resolves any conflicts between the parties over statements contained in affidavits in the plaintiff's favor. *Love*, 611 F.3d at 608; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, where allegations are controverted by a defendant, the plaintiff cannot "simply rest on the bare allegations of [the] complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Philips v. Pitt Cnty. Mem'l Hosp., Inc.*, 855 F. App'x 324 (9th Cir. 2021)[4] (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Core-Vent Corp.*, 11 F.3d at 1484; *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

5

Constitution of this state or of the United States."). Thus, only constitutional principles constrain the jurisdiction of a federal court in California. *Love*, 611 F.3d at 608–09.

Under the Fourteenth Amendment's Due Process Clause, courts may exercise personal jurisdiction over non-resident defendants only so long as there are sufficient "minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).[5] "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068.

**ANALYSIS**

In the pending motion to dismiss, defendants contend that: (1) this court lacks subject matter jurisdiction over this action; (2) this court lacks personal jurisdiction over defendants; (3) the Eastern District of California is an improper venue; and (4) plaintiffs fail to state any cognizable claims upon which relief can be granted. (Doc. No. 15 at 13, 17–19.)

**A.      Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)**

In their complaint, plaintiffs assert that this court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 on the grounds that diversity jurisdiction exists and pursuant to 28 U.S.C. § 1331 on the grounds that federal question jurisdiction exists. (Doc. No. 1 at ¶ 2.) Defendants first argue that this court lacks subject matter jurisdiction over this action because the complaint fails to set forth a basis for the invocation of diversity jurisdiction. (Doc. No. 15 at 17.) Defendants next argue that the federal claims asserted by plaintiffs are subject to dismissal

/////

---

[5] A plaintiff must also establish personal jurisdiction for "each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same "common nucleus of operative facts" as the claim for which jurisdiction exists. *Id.*

pursuant to Rule 12(b)(6), and upon their dismissal, this court will similarly lack federal question jurisdiction over this action. (*Id.*)

As described above, plaintiffs assert a federal constitutional claim in this action brought pursuant to 42 U.S.C. § 1983. (Doc. No. 1 at ¶¶ 90–97.) The court thus may exercise federal question jurisdiction over this claim and supplemental jurisdiction over plaintiffs' remaining related claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"); 42 U.S.C. § 1983 ("Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."); 28 U.S.C. § 1367 (explaining that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related . . . that they form part of the same case or controversy . . . ."). Accordingly, because the court has subject matter jurisdiction over this action, the court need not analyze at this time whether the requirements for diversity of citizenship have been met.[6]

**B.   Personal Jurisdiction Pursuant to 12(b)(2)**

Defendants contend that plaintiffs' complaint must be dismissed because this court lacks both general and specific personal jurisdiction over the named defendants. (Doc. No. 15 at 13.) In their complaint, plaintiffs do not proffer any basis—either general or specific—on which this court may exercise personal jurisdiction over defendants. Nonetheless, in their opposition to the

---

[6] Defendants are correct that if the court were to dismiss plaintiffs' federal claims (which give rise to federal question jurisdiction) under Rule 12(b)(6) but leave pending plaintiffs' state law claims, the court would need to evaluate at that time whether this court has diversity jurisdiction (or any other basis for subject matter jurisdiction) over this action. If that scenario were to unfold, and if there was no basis for the exercise of subject matter jurisdiction at that time, the court would be obligated to dismiss this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). However, because the court will dismiss the entirety of this action for lack of personal jurisdiction, it need not reach defendants' arguments with respect to Rule 12(b)(6), and this order therefore does not run afoul of the potential subject matter jurisdiction problem explained in this footnote.

pending motion, plaintiffs advance arguments only with respect to specific personal jurisdiction, apparently conceding that this court lacks general personal jurisdiction over defendants. (*See* Doc. No. 32 at 7–10; *see also* Doc. No. 15 at 13); *Lopez v. County of Los Angeles*, No. 3:15-cv-03804-TEH, 2016 WL 54123, at *2 (N.D. Cal. 2016) ("[B]ecause Plaintiff failed to oppose many arguments in the instant motion to dismiss, the Court may treat such non-opposition as implicit consent to the merits of the arguments asserted, and consequently as consent to dismissal of the Complaint."). Therefore, the court considers only whether specific jurisdiction over defendants exists in California.

The parties do not dispute that defendants are not residents of California. (*See* Doc. Nos. 15 at 14; 32 at 7–8.) In determining whether a court has specific jurisdiction over a non-resident defendant, the following three-prong test is to be employed:

> (1) The non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which *arises out of* or *relates to* the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*.

*Picot*, 780 F.3d at 1211 (citing *Fred Martin Motor Co.*, 374 F.3d at 802) (emphasis added). Plaintiff has the burden of establishing the first two of these prongs, and a "strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (*en banc*). If plaintiff meets this burden, the burden then shifts to defendant on the third prong to show that the exercise of jurisdiction would not be reasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

1. <u>Purposeful Direction of Activities</u>

The analysis under this first prong of the three-step inquiry differs depending on whether the action involves allegations of tortious conduct or contractual obligations. *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995); *Sinatra v. National Enquirer, Inc.,* 854 F.2d

1191, 1195 (9th Cir. 1988). A "purposeful availment" analysis is typically applied in suits sounding in contract, and a "purposeful direction" analysis is typically applied in suits sounding in tort. *See Fred Martin Motor Co.*, 374 F.3d at 802. Because plaintiffs' claims asserted in this action sound in tort, the court will apply the purposeful direction analysis.[7] *See Thomas v. Thomas*, No. 8:14-cv-01096-JLS-RNB, 2015 WL 12681311, at *4 (C.D. Cal. May 8, 2015) (applying purposeful direction test because breach of fiduciary duty claims "sound in tort"); *Eighteen Seventy L.P. v. Jayson*, 532 F. Supp. 3d 1125, 1136 (D. Wyo. 2020) (describing breach of fiduciary duty claims as "firmly grounded in tort"); *Ziegler*, 64 F.3d at 474 ("A section 1983 claim for deprivation of a constitutional right is more akin to a tort claim than a contract claim."); *Galusha v. Dowling*, No. 2:10-cv-04573-PSG-PJW, 2010 WL 4668325, at *6 (C.D. Cal. Nov. 9, 2010) ("Because Plaintiffs' claim that [defendant] has violated their due process rights pursuant to § 1983 more closely resembles a tort claim than a contract claim . . . the 'effects test' is appropriate . . . .").

"Where allegedly tortious conduct takes place outside the forum and has effects inside the forum," courts in the Ninth Circuit examine purposeful direction by using the three-part "effects" test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020), *cert. denied*, No. 20-1430, ⸺ U.S. ⸺, 142 S. Ct. 76 (2021). This "*Calder* effects test" asks whether the defendant is alleged to have (1) committed an intentional act (2) that was expressly aimed at the forum state and (3) that caused harm the defendant knew was likely to be suffered in the forum state. *Fred Martin Motor Co.*, 374 F.3d at 803.

Under the first element, "[t]he meaning of the term 'intentional act' . . . is essentially the same as in the context of intentional torts; namely, the defendant must act with the 'intent to perform an actual, physical act in the real world.'" *Picot*, 780 F.3d at 1214 (quoting *Fred Martin*

---

[7] In their pending motion to dismiss, defendants state that plaintiffs bring "contract claims predicated upon the [Condominium Association] Bylaws." (Doc. No. 15 at 14.) Although plaintiffs reference the Condominium Association's bylaws in their complaint and state that defendants acted "in usurpation of the . . . Bylaws," plaintiffs do not actually assert a contract-based cause of action in the complaint. (Doc. No. 1 at ¶ 51.)

9

*Motor Co.*, 374 F.3d at 806). Here, taking the facts alleged in the complaint in the light most favorable to plaintiffs, the court finds that plaintiffs have sufficiently alleged that defendants committed an intentional act by pursuing the sale of the subject condominium through the soliciting of unit owner votes on the proposed sale and negotiating such a sale with SPONA. (*See* Doc. No. 1 at ¶ 26.) *See, e.g.*, *Thomas*, 2015 WL 12681311, at *2, 4 (trustee's alleged transfer of trust assets constitutes an intentional act); *Eighteen Seventy L.P.*, 532 F. Supp. 3d at 1138 (defendant's alleged misrepresentations to investors made in order to induce investment in a company constitute intentional acts); *Loomis v. Slendertone Dist., Inc.*, 420 F. Supp. 3d 1046, 1068 (S.D. Cal. 2019) (development, advertising, and sale of a product constitutes an intentional act).

Under the second element of the *Calder* effects test, express aiming at the forum state, the focus of the court's analysis is on the "defendant's contacts with the forum state itself, not the defendant's contacts with the persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In this case, the court concludes that plaintiffs have not carried their burden of sufficiently alleging that the named defendants expressly aimed their intentional conduct at California. *See Picot*, 780 F.3d at 1211. Plaintiffs do not allege that defendants have had any contact whatsoever with the forum state, nor do the over-470-pages of exhibits attached to their complaint give rise to any inference that defendants have had any contact with California whatsoever. (*See* Doc. Nos. 1 at ¶ 7; 1-3 at 1–473.) Rather, plaintiffs advance only the unpersuasive argument that defendants "clearly attempt[ed] to promote or transact business in California" because they "actively, continuously and aggressively attempted and continue to attempt to sell plaintiffs' property," and plaintiffs happen to reside in California. (Doc. No. 32 at 8.) Notably, plaintiffs do not allege that defendants even knew that plaintiffs—two owners of condominium units in a 467-unit condominium property located in Illinois—also maintained residences in California. In any event, the express aiming requirement is clearly not satisfied merely "by a defendant's knowledge that harm may be inflicted on a plaintiff in a particular forum." *AMA Multimedia, LLC*, 970 F.3d at 1209, n.5. (citing *Axiom*, 874 F.3d at 1068–70; *Walden*, 571 U.S. at 286); *see also Fred Martin Motor Co.*, 374 F.3d at 807 (finding that while

"[i]t may be true that [defendant's] intentional act eventually caused harm to [plaintiff] in California . . . . this does not confer jurisdiction."). Accordingly, plaintiff has not established the express aiming prong of the *Calder* effects test.

As for the third and final element of the *Calder* effects test, which concerns the sufficiency of allegations of harm, "'something more' than mere foreseeability" is required. *Fred Martin Motor Co.*, 374 F.3d at 804–05 (quoting *Bancroft & Masters*, 223 F.3d 1082, 1087 (9th Cir. 2000)). An action taken outside the forum state with foreseeable effects within the forum state does not *per se* give rise to specific personal jurisdiction. *Id.* As the Supreme Court has made clear, "mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 571 U.S. at 290. Accordingly, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

Because plaintiffs have not alleged facts establishing that defendants expressly aimed their conduct at California, the court has no basis upon which it can find that it would have been foreseeable that defendants' actions in Illinois regarding the management and sale of property in Illinois would cause harm to plaintiffs in California. *See Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1246 (D. Haw. 2019) (finding that it was foreseeable that a Hawaii plaintiff would suffer harm in Hawaii, where the defendant expressly aimed its conduct, but it was not foreseeable that a California plaintiff would suffer harm in California, where the defendant did not expressly aim its conduct); *cf. Loomis*, 420 F. Supp. 3d at 1070 (finding that it was foreseeable that defendant's conduct targeted at California would cause harm in that state). The third element of the *Calder* effects test is not met where, as here, the only connection between defendants' conduct and the forum state is an injury to plaintiffs who reside in the forum state. *See Walden*, 571 U.S. at 290. Moreover, in their opposition to the pending motion plaintiffs do not provide any arguments or authority relating to this third element of the *Calder* test. Accordingly, the court finds that plaintiff have not met their burden of demonstrating the

/////

elements of the *Calder* effects test,[8] and as a result, have failed to allege facts establishing that defendants purposefully directed their activities toward California.

### 2. Claim Arises out of or Relates to Forum-Related Activities

To satisfy the second prong of the specific jurisdiction analysis, plaintiffs must show that their claims arise out of or relate to the non-resident defendant's forum-related activities. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, ⸺ U.S. ⸺, 137 S. Ct. 1773, 1780 (2017); *Picot*, 780 F.3d at 1211. The Supreme Court has provided the following guidance with regard to this prong:

> The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.

*Ford Motor Co. v. Montana Eighth Judicial District Court*, ⸺ U.S. ⸺, 141 S. Ct. 1017, 1026 (2021) ("*Ford Motor*"). In other words, "although the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum, a strict causal relationship between the defendant's

---

[8] Indeed, plaintiffs do not address the "*Calder* effects test" whatsoever in their briefing in opposition to defendants' pending motion to dismiss, further supporting the court's conclusion that plaintiffs have not met their burden in establishing purposeful direction, the first prong of the specific jurisdiction analysis. Nor, in the alternative, do plaintiffs address—or even mention—the applicable legal standards to a purposeful availment analysis. Instead, plaintiffs merely assert that defendants "actively, continuously and aggressively attempted and continue to attempt to sell plaintiffs' property," which has resulted in "harm . . . in the forum state." (*See* Doc. No. 32 at 8.) Thus, even if the court were to analyze specific jurisdiction in this case under a purposeful availment test, plaintiffs would similarly fail to meet their burden of establishing the first prong of the specific jurisdiction analysis. "A showing of purposeful availment typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there, which thereby invoke the benefits and protections of the forum's laws." *Galusha*, 2010 WL 4668325, at *4. Here, plaintiffs have not alleged that defendants executed any contracts in California or took any other actions to purposefully avail themselves of the privileges and benefits of California's laws. *See id.* ("[E]ven assuming that [defendant] did, in fact, obtain a mortgage on the [out of state property] from a lender in California, the existence of such a contract is not enough to demonstrate purposeful availment.") Accordingly, plaintiffs have failed to allege facts sufficient for this court to exercise personal jurisdiction over defendants under either a personal availment or purposeful direction analysis.

activities in the forum and the harm is not required." *Wesch v. Yodlee, Inc.*, No. 3:20-cv-05991-SK, 2021 WL 3486128, at *5 (N.D. Cal. Aug. 5, 2021) (citing *Ford Motor*, 141 S. Ct. at 1025-26). Rather, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[9] *Ford Motor*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1780).

Because plaintiffs fail to allege any contacts by defendants with California, they likewise fail to allege that their claims arise out of defendants' California-related activities. *See Picot*, 780 F.3d at 1215 (finding that "none of [defendant's] challenged conduct had anything to do with [California] itself" where the defendant's suit-related conduct was all conducted "from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California"); *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F. 4th 852, 863–64 (9th Cir. 2022) ("Given that there are no material contacts that Plaintiffs have put into the record, [defendant's] alleged contacts with Arizona are inadequate to render [defendant] subject to jurisdiction in Arizona."). Thus, the court finds that, as alleged, defendants' actions in this case do not connect them with California in a way sufficient to support the assertion of personal jurisdiction over them here. *See Picot*, 780 F.3d at 1215.

3. Reasonableness

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Having failed to satisfy the first two prongs of the specific

---

[9] Before the Supreme Court's decision *Ford Motor*, courts in the Ninth Circuit required a showing of but-for causation, i.e., but for defendant's alleged contacts with and activities within the forum state, plaintiff's cause of action would not have arisen. *Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 3:18-cv-823-JLS-JLB, 2021 WL 3493094, at *10 (S.D. Cal. Aug. 6, 2021) ("[C]ourts within the Ninth Circuit have traditionally applied a 'but for' test to determine whether a claim 'arises out of or relates to' a defendant's contacts with a forum."); *Clarke v. Dutton Harris & Co., PLLC*, No. 2:20-cv-00160-JAD-BNW, 2021 WL 1225881, at *4 (D. Nev. Mar. 31, 2021) ("Historically, courts in the Ninth Circuit exclusively relied on a 'but for' test to determine whether a particular claim arises out of forum-related activities. But the Supreme Court appears to have recently done away with that approach in [*Ford Motor*].").

13

jurisdiction analysis, plaintiffs have failed to establish that defendants are subject to personal jurisdiction in California for the claims asserted in their complaint. Accordingly, the court need not address reasonableness, the third element of the specific jurisdiction analysis.

**C.    Improper Venue Pursuant to Rule 12(b)(3) and Failure to State a Claim Pursuant to Rule 12(b)(6)**

Having concluded that the court lacks personal jurisdiction over defendants, the court will not address defendants' arguments advanced in support of their motion brought pursuant to Rules 12(b)(3) and 12(b)(6). Accordingly, defendants' pending motion to dismiss will be denied to the extent it rests on the remaining bases for dismissal argued therein as having been rendered moot by this order.

**D.    Leave to Amend**

Plaintiffs have requested leave to amend their complaint in the event the court grants defendants' motion to dismiss. (Doc. No. 32 at 26.) "Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (quoting Fed. R. Civ. P 15(a)(2) and *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). There are several factors a district court considers in determining whether to grant leave to amend, including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Of the factors from *Foman*, the court should particularly consider prejudice to the opposing party. *Id.*; *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In plaintiffs' opposition to the pending motion to dismiss, they argue that if the court were to find that it lacks subject matter jurisdiction based on diversity of citizenship over this action as pled, such a defect could be "remedied by amendment." (Doc. No. 32 at 10–11.) Notably, plaintiffs advance no such argument with respect to the court's ability—or lack thereof—to exercise personal jurisdiction over defendants. This silence is telling. The parties do not dispute

14

that they engaged in over a year of litigation in connection with the sale of the subject condominiums prior to the initiation of this action.[10] (Doc. Nos. 15 at 11; 32 at 9.) It thus appears that, due to the prior litigation, if there existed any jurisdictional facts on which the court could exercise personal jurisdiction over defendants, plaintiffs would have possessed such facts at the time of the filing of the complaint in this action and would have pled such facts therein. Given that plaintiffs have not pled facts supporting the assertion of personal jurisdiction in this action and do not even suggest that they could cure the defects with respect to personal jurisdiction by amending their complaint, the court finds that the granting of leave to amend here would be futile. Therefore, plaintiffs' motion to dismiss for lack of personal jurisdiction is granted without leave to amend.

**CONCLUSION**

For the reasons stated above:

1. Defendants' motion to dismiss for lack of subject matter jurisdiction (Doc. No. 15) is denied;

2. Defendants' motion to dismiss for lack of personal jurisdiction (Doc. No. 15) is granted without leave to amend;

3. The remainder of defendants' motion to dismiss (Doc. No. 15) is denied as having been rendered moot by this order;

4. The Clerk of the Court is directed to terminate Ellen Bischoff as a named defendant in this action; and

5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **February 2, 2023**                    _Dale A. Drozd_
                                                  UNITED STATES DISTRICT JUDGE

---

[10] The parties refer to a lawsuit filed by plaintiffs in Illinois state court in 2020 against some of the defendants named in this action. (*See* Doc. Nos. 15 at 11; 32 at 9.) Separately, a related action, *Cherry v. Strategic Properties of North America, LLC*, 2:22-cv-00999-DAD-DB, which was initiated after plaintiffs filed their complaint in this action, remains pending before this court. (*See* Doc. No. 38.)